

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAROL BOLTON EL, | ) |
| Plaintiff, | ) |
| v. | ) 04 C 1125 |
| SERVICE CORPORATION INTERNATIONAL, | ) Judge Ronald A. Guzmán |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carol Bolton El has sued Defendant Service Corporation International ("SCI")[1] for discrimination based on race, color and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983"), and the Americans with Disabilities Act of 1990 ("ADA"). Pending is SCI's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## FACTS

Except as noted, the following facts are undisputed. For the purposes of the instant motion, the Court views any properly disputed fact in plaintiff's favor. Plaintiff Carol Bolton El, an African-American woman, is a citizen of Illinois. (Compl. ¶ 1). Defendant SCI is a corporation located in Illinois. (Answer ¶ 2.)

In 1998, plaintiff applied for a position as a receptionist for Rosehill Cemetery and

---

[1] In her complaint, Plaintiff misnamed her former employer. Plaintiff was employed by SCI Illinois Services, Inc., not Service Corporation International. Because the parties have treated the instant suit as having named the correct party, so shall this Court.

Mausoleum ("Rosehill"). (Def.'s LR 56.1(a)(3) ¶ 3.) Ronald Graeff, then general manager at Rosehill, interviewed and hired Bolton. (*Id.*) In February 2001, Bolton agreed to familiarize herself with the information contained in SCI's Employee Handbook. (*Id.* ¶ 10.) In the "Rules of Conduct" section, SCI's Employee Handbook states: "Employees are the Company's primary asset. Therefore, it is important that all employees conduct themselves courteously and professionally. There are some forms of behavior that will not be tolerated, including, but not limited to: . . . Insubordination, or refusal to comply with reasonable instructions." (*Id.* ¶ 7.) Furthermore, under the section entitled "Our Values," the Handbook states: "All clients and employees must be treated equally regardless of race, color, sex, national origin, age, religion, or disability." (*Id.* ¶ 8.) The Handbook also contains a "Policy Against Harassment" section which sets forth the procedures for reporting alleged harassment.

> If you have reason to believe that you, a fellow employee, or an employee who reports directly to you is a victim of harassment, you are required to report it immediately. Report all cases of alleged harassment to your supervisor, who will then assist in the investigation and problem resolution phases . . . . If the supervisor is part of the problem, report it to the next level of management. Complaints will be investigated promptly and will be resolved . . . . Employees must never be exposed to retaliation for having made a complaint or for participating in any investigation.

(*Id.* ¶ 9.)

While employed by SCI, plaintiff, who suffers from sickle cell anemia, repeatedly called in sick and occasionally came to work late. (Pl.'s LR 56.1(b)(3)(A) ¶ 12.) In 1999, she failed to receive her one-year anniversary pin from SCI. (*Id.* ¶ 57.) Beginning in the summer of 2000 and continuing into 2001, she complained to her supervisors that the office was too cold. (*Id.* ¶¶ 13-14.) According to Bolton El, Florence Padlo, her supervisor, and Peter Sfickes, a counselor at Rosehill, deliberately set the temperature of the air conditioning low in order to make Bolton ill. (*Id.* ¶ 14.) Plaintiff admits that the air conditioning affected everyone in the office, not just

her. (*Id.* ¶ 16.) According to SCI, Bolton El was permitted to take extra breaks whenever she needed to warm up outside. (Def.'s LR 56.1(a)(3) ¶ 15.) However, Bolton El denies that she was allowed to take breaks. (Pl.'s LR 56.1(b)(3)(A) ¶ 15.)

In December 2000, Leonard Hayes replaced Graeff as general manager of Rosehill. (Def.'s LR 56.1(a)(3) ¶ 20.) In April 2001, Bolton El left the office without notifying anyone or obtaining prior approval because the office was too cold. (Pl.'s LR 56.1(a)(3)(A) ¶ 21.) Hayes issued Bolton El a warning notice for the incident that said Bolton El would receive another warning and a one-day suspension if the incident occurred again. (Def.'s LR 56.1(a)(3) ¶¶ 21-22.) Hayes told Bolton El he would make sure the thermostat was set at seventy-two degrees. (*Id.* ¶ 23.) After the incident, Hayes also bought Bolton El a space heater for her to use at her desk. (*Id.* ¶ 24.)

On August 20, 2001, Hayes issued Bolton El a warning for failure to communicate with a co-worker in Houston, Texas. (*Id.* ¶ 25.) The warning notice stated that should the incident occur again, Bolton El would be discharged. (*Id.*) According to the warning notice, Bolton El became defensive with a co-worker and said to her, "You are acting as if I am trying to scam you. I am not trying to scam you." (*Id.* ¶ 26.) Bolton El wrote in the response section of the warning notice that she did not understand why she was receiving a warning and did not understand "[w]hat's wrong with the conversation" she had with the co-worker. (*Id.* ¶ 27.) Plaintiff also denied that she was defensive with the co-worker. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 26-27.)

In 2003, SCI failed to give Bolton El her five-year anniversary pin. (Pl.'s Dep. at 102-03.) She wrote the Houston office asking about her pin, and yet she never received it. (*Id.*) At an unspecified time, Mr. Lennahan, a sales counselor at Rosehill, allegedly commented that "If

3

there were more blacks in France, they wouldn't be killing off the Jews" in response to an article about people in France killing Jews. (*Id.* ¶ 83.) Bolton El did not report the comment to her supervisors. (*Id.* ¶ 84.)

In February 2003, Bolton El and Jeannette Kovitz, an administrative assistant, cemetery historian, and tour guide at Rosehill, discussed water access rights between Turkey and India. (Def.'s LR 56.1(a)(3) ¶ 28.) Bolton El stated that the countries should not fight over water because it belongs to everyone. (*Id.*) Kovitz responded, "Martin Luther King, Jr. thought that way and they killed him." (Pl.'s LR 56.1(b)(3)(A) ¶ 28.) Bolton El's supervisor, Florence Padlo, who was sitting at the table with Kovitz and Bolton El, told Kovitz that her statement was "not right." (*Id.* ¶ 29.) Bolton El did not report the incident to a supervisor because she said her supervisor, Padlo, was sitting at the table when the statement was made. (*Id.*)

At a later date, Kovitz said that something on the internet was "Christian." (Def.'s LR 56.1(a)(3) ¶ 31.) Bolton El, then, said there was only one God. (*Id.*) Kovitz began to shout at Bolton El until Padlo told her to stop. (*Id.*) Kovitz left but later returned and stared at Bolton El. (*Id.*) Then, Kovitz walked by and dropped some books on the floor near Bolton El. (*Id.*)

In February 2003, Bolton El called SCI's Care Line, a service provided by SCI that employees could call to voice their concerns or complaints, to report Kovitz's "Christian" comment and to complain about the warning she received for failure to communicate with a co-worker. (Pl.'s LR 56.1(b)(3)(A) ¶ 32.) After her call to the Care Line, Ruby Matthews visited Rosehill to investigate Bolton El's complaint. (*Id.* ¶ 34.) Matthews, former Regional Vice President for Human Resources for SCI, interviewed employees that were in the office on the date of the incident between Kovitz and Bolton El. (*Id.*) Matthews also met with Bolton El and told her she was "going to see if we can . . . make sure you have a nice life here [at work] also."

(Def.'s LR 56.1(a)(3) ¶ 36.)

According to SCI, after Matthews' investigation she met with Bolton El, Padlo, and Hayes. (*Id.* ¶ 37.) SCI maintains that during this meeting Bolton El became "agitated and declined to accept any responsibility for contributing to the conflict in the office." (*Id.*) She denies that this meeting occurred and that she became agitated with her supervisors. (Pl.'s LR 56.1(b)(3)(A) ¶ 37.)

In April 2003, another disputed incident allegedly occurred. (Def.'s LR 56.1(a)(3) ¶¶ 38-39.) According to SCI, Bolton El received a warning from Hayes because she was upset and co-workers overheard her on the phone saying that "she hates this place" and "she hates everybody." (*Id.* ¶ 38.) Hayes allowed her to take a personal day in order to seek professional treatment. (*Id.* ¶ 39.) Although SCI produced a copy of the warning notice, it was not signed by Bolton El or Hayes, unlike the previous notices which contained both signatures. (*Id.*) Plaintiff denies that the incident occurred and that she received this warning. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 38-39.)

Prior to her termination, plaintiff had been helping Sfickes by inputting data into the cemetery's memorial list, which is a spreadsheet. (Def.'s LR 56.1(a)(3) ¶ 40.) Despite the fact that she was asked to help Sfickes, plaintiff did not view it as her job to help Sfickes and viewed it as optional, *i.e.*, "whether I felt like doing it or not." (Pl.'s Dep. at 91.) Plaintiff, however, admits that she had been helping Sfickes ever since she had been at SCI. (*Id.*) Plaintiff also admits that noone else understood how to download the memorial list tracking log. (*Id.* at 87.)

On the day of her termination, August 19, 2003, according to plaintiff, Padlo, her supervisor, told her to turn her computer on. (*Id.*) When Bolton El turned on her computer, she noticed that the memorial list was on the computer screen of Mary Derring, an administrative

assistant. (*Id.*) Bolton El assumed her supervisor wanted Derring to work on the memorial list. (*Id.*) At the end of the day, Hayes "called her in" and asked her if she was still working on the memorial list. (*Id.* at 87-88.) When she told him "no," he terminated her for insubordination. (*Id.* at 89.)

On August 21, 2003, Bolton El filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging harassment, unequal wages and termination based on her race. (Compl. ¶¶ 7-9.) She did not include any claims of color or disability discrimination in her charge. (*Id.*) On December 22, 2003, the EEOC issued a right-to-sue letter to Bolton El. (*Id.* ¶ 6.) Bolton El filed her complaint on February 12, 2004.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court does not "weigh the evidence or determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the nonmoving party. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). Therefore, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 795 (7th Cir. 2001).

Local Rule 56.1 sets forth the obligations of each party moving for and opposing

summary judgment. N.D. ILL. LR 56.1. A moving party must serve and file any affidavits and other materials referred to in Rule 56(e), a supporting memorandum of law, and a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. N.D. ILL. LR 56.1(a). A party opposing a motion for summary judgment is required to serve and file any opposing affidavits and other materials referred to in Rule 56(e), a supporting memorandum of law, a concise response to the movant's statement of facts and a statement of additional facts that require the denial of summary judgment. N.D. ILL. LR 56.1(b)(3)(A)-(B). The opposing party's failure to controvert the moving party's statement of facts results in the moving party's version of the facts being deemed admitted. N.D. ILL. LR 56.1(b)(3)(B). The Seventh Circuit has repeatedly upheld the strict enforcement of Local Rule 56.1. *See Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1102-03 (7th Cir. 1990) (discussing application of Local Rule 12(m), the predecessor to Local Rule 56.1); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (same).

SCI argues that Bolton El's Local Rule 56.1(b)(3)(A) statement should be stricken in its entirety because it does not comply with the local rules. The Court denies this request because she has provided her own declaration as to each of her responses. *See* 28 U.S.C. § 1746. Unfortunately for plaintiff, however, the Court's denial of the request to strike the statement in its entirety does not mean that her responses are sufficient to create a genuine issue of material fact for trial.

### I. Section 1983 Claim

In her complaint, Bolton El alleges that SCI discriminated against her based on her race and color in violation of Section 1983. (Compl. ¶ 3.) Section 1983 provides:

7

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a claim pursuant to Section 1983, the plaintiff must show that she (1) "held a constitutionally protected right;" (2) was "deprived of this right in violation of the Constitution;" (3) "defendant[] intentionally caused this deprivation;" and (4) "defendant[] acted under color of law." *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988). SCI is a privately owned corporation (*see* Answer ¶ 2), and Bolton El has failed to establish that SCI acted under color of law as a state actor. Thus, the Court grants SCI's motion for summary judgment as to the race and color discrimination claims under Section 1983.

## II. ADA Claim

In her complaint, Bolton El alleges that SCI discriminated against her in violation of the ADA. "In order to recover for violations of Title I of the ADA, a plaintiff must file a charge of discrimination with the EEOC . . . ." *Stewart v. County of Brown*, 86 F.3d 107, 110 (7th Cir. 1996). "The condition precedent of an EEOC charge serves the dual purpose of affording the EEOC with the opportunity to quickly settle the dispute with the employer and puts the employer on notice of the charges against it." *Wagner v. Ill. Dep't of Pub. Aid*, No. 98 C 7268, 1999 WL 1016263, at *3 (N.D. Ill. Nov. 4, 1999). In her EEOC charge, Bolton El alleged harassment, unequal wages and termination based on her race. (Compl. ¶¶ 7-9.) She did not allege disability discrimination in her EEOC charge. (*Id.*)

However, a plaintiff may pursue a claim not explicitly included in her discrimination

charge if the allegation falls within the scope of the EEOC charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). In determining whether a complaint's allegation fall within the scope of the EEOC charge, a court considers whether it is reasonably related to the EEOC charges. *Id.* If they are, the court then determines whether the claim could reasonably develop from the EEOC investigation of the charges before it. *Id.* "Claims are not alike or reasonably related unless there is a factual relationship between them." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (finding that unless allegations in complaint can reasonably be inferred from facts alleged in charge then claims are not reasonably related.)

All the allegations contained in Bolton El's EEOC charge pertain to her race. (Compl. ¶¶ 7-9.) Bolton El does not mention her disability in her EEOC charge. (*Id.*) Additionally, there are no facts in her charge that relate to a disability discrimination claim. (*Id.*) Nothing in Bolton El's charge would reasonably lead to an EEOC investigation into whether SCI discriminated against Bolton El based on her disability. Therefore, her claim for disability discrimination is beyond the scope of the EEOC charge.

Although Bolton El suffers from sickle cell anemia, she testified at her deposition that she did not consider it to be a disability. (Pl.'s Dep. at 47-48.) Moreover, she has testified that she is not pursuing a disability claim. (*Id.* at 105-06.) Thus, the Court grants SCI's summary judgment motion as to Bolton El's disability discrimination claim under the ADA.

### III. Claims Based on Race and Color Discrimination

Bolton El alleges that SCI discriminated against her based on her race and color in violation of Title VII and Section 1981. "Because we evaluate [Section] 1981 claims under the same rubric as Title VII claims, we need not address them separately." *Herron v.*

9

*DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004). Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). SCI argues that Bolton El's claim of color discrimination is beyond the scope of the EEOC charge because she failed to include color discrimination in her EEOC charge and this claim does not "reasonably" relate or "grow out" of her race claim in the EEOC charge. (Def.'s Mem. Supp. Summ. J. at 1-3); *see Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). The Court need not reach the issue. Even if the Court were to assume without ruling that no distinction between race and color should be made in the instant case, the Court would nonetheless grant SCI's summary judgment motion.

There are two ways a plaintiff can defeat a motion for summary judgment in a Title VII case. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct method, a plaintiff can offer direct or circumstantial evidence that his employer's action was motivated by an impermissible purpose. *Id.* Alternatively, the indirect burden-shifting approach allows that plaintiff to raise an inference of discrimination by offering sufficient evidence to establish a *prima facie* case. *Id.* To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she belongs to a protected class; (2) she performed his job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of his classification more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

Bolton El does not appear to attempt to establish race or color discrimination via the

direct method. As such, her claim will be reviewed under the *McDonnell Douglas* burden-shifting method. Both parties agree that Bolton El is African-American and was terminated from her position with SCI. Thus, Bolton El satisfies the requirements of the first and third prongs of the *prima facie* case. However, for the reasons discussed below, she fails to satisfy the second and fourth prongs.

### A. Satisfactory Job Performance

To satisfy the second prong of the *prima facie* case, the plaintiff must show that she was performing her job satisfactorily. *Id.* Although Bolton El admits that she was terminated for insubordination, she disputes that her conduct constituted insubordination. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 40-52.)

Plaintiff admits that she would receive information from Sfickes that she needed to enter into a spreadsheet. (*Compare* Def.'s LR 56.1(a)(3) ¶ 40 *with* Pl.'s LR 56.1(b)(3)(A) ¶ 40.) She helped Sfickes by inputting data into the cemetery's memorial list, which is a spreadsheet. (*Id.*) Despite the fact that she was asked to help Sfickes, plaintiff did not view it as her job to help Sfickes and viewed it as optional, *i.e.*, "whether I felt like doing it or not." (Pl.'s Dep. at 91.) Plaintiff, however, concedes that she had been helping Sfickes ever since she had been at SCI. (*Id.*) Plaintiff also testified that noone else understood how to download the memorial list tracking log. (*Id.* at 87.)

Plaintiff testified that on August 19, 2003, Hayes "called her in," asked her if she was still helping Sfickes' with his memorial list. (Pl.'s Dep. at 87-88.)[2] When she answered "no,"

---

[2]To the extent that plaintiff's declaration in support of her LR 56.1(b)(3)(B) statement contradicts her prior sworn deposition testimony, the declaration cannot create a genuine issue of

11

Hayes fired her for insubordination. (*Id.*)

Bolton El's own opinion that her conduct constituted satisfactory job performance, *i.e.*, that her refusal to help Sfickes was not insubordination because she viewed any such help as optional, does not give rise to a genuine material factual dispute. *See Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996). The mere assertion that one has performed satisfactorily is insufficient to overcome the employer's good faith business judgment regarding the employee's performance. *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998). Bolton El has not disputed that Hayes honestly believed Bolton El had refused to resume assisting Sfickes with the memorial list as she had done ever since she was first employed by SCI or that such conduct rose to the level of insubordination. (Def.'s LR 56.1(a)(3) ¶¶ 43-50.) Bolton El has failed to present any genuine issue as to the material fact regarding whether she was performing her job satisfactorily or meeting the legitimate expectations of her employer.

### B. Similarly Situated Employees

Employees are similarly situated if they are directly comparable in all material respects. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). When a plaintiff claims that she was disciplined by her employer more harshly than a similarly situated employee, a plaintiff must show that she and the more favorably treated employee "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

---

material fact. *See Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 807 (N.D. Ill. 2005).

Bolton El compares herself to two other employees at Rosehill. In her complaint, Bolton El asserts that Derring, an administrative assistant, and Sfickes, a counselor, were not discharged for similar acts of insubordination. (Compl. ¶ 9.) Yet, in her Local Rule 56.1(b)(3)(A) statement she stated that she did not know if Derring or Sfickes were ever insubordinate while employed by SCI. (Pl.'s LR 56.1(b)(3)(A) ¶ 54.)

Because Bolton El has failed to offer facts of similarly situated employees whom SCI treated differently from her, she has failed to raise a genuine issue of fact as to the fourth prong of the *prima facie* case. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001). Because Bolton El has failed to establish a *prima facie* case of discrimination based on race and color, the Court need not address the issue of pretext. *See Foster v. Arthur Anderson, LLP*, 168 F.3d 1029, 1036 (7th Cir. 1999). Even if Bolton were able to establish a *prima facie* case, SCI has provided a legitimate, nondiscriminatory reason for her termination, which includes its belief that she had been insubordinate, and she has failed to raise a genuine issue as to a material fact regarding whether SCI's reasons were a pretext for discrimination. *See Hartley v. Wisc. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997) ("Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless."). The Court, therefore, grants SCI's summary judgment motion as to plaintiff's claims of racial and color discrimination.

### IV. Hostile Work Environment

Bolton El alleges that she was subject to harassment because of her race and color. Defendant's request that the Court not consider those incidents that are beyond the 300-day statute of limitations is denied. Title VII requires that an employee file a charge of

13

discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court interpreted the statute of limitations filing requirement in Title VII. 536 U.S. 101 (2002). The Court held that a hostile work environment claim under Title VII includes events that occurred outside of the 180- or 300-day limitations period, as long at least one act occurred within the applicable filing period. *Id.* at 118. The Court noted that a hostile work environment results from the cumulative effect of individual acts. *Id.* at 117. Therefore, an "employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.

Bolton El alleges seven incidents of harassment: (1) the temperature of the office in 2000 and 2001; (2) the warning notice she received for her conversation with a co-worker in Texas in August 2001; (3) Kovitz's comment regarding Martin Luther King, Jr. in February 2003; (4) the response from Matthews to her complaint to Rosehill's Care Line in March 2003; (5) her termination in August 2003; (6) SCI's failure to give her one-year and five-year anniversary pins; and (7) Mr. Lennahan's comment regarding the killing of Jews in France. (Def.'s LR 56.1(a)(3) ¶ 57.) Bolton El filed her charge with the EEOC on August 21, 2003. (Compl. ¶ 2.) Three of the incidents occurred within 300 days of the date she filed a charge with the EEOC; therefore, all seven events will be considered by the Court.

To establish a claim for a hostile work environment, the plaintiff must prove that the workplace was objectively offensive so that "a reasonable person would find [it] hostile or abusive." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002) (internal quotations omitted). "For the harassment to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working

14

atmosphere." *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 479 (7th Cir. 1996). "[I]solated and innocuous incidents will not support a hostile environment claim." *Id.* at 480. "[T]he workplace that is actionable is the one that is hellish." *Herron*, 388 F.3d at 303 (internal quotations omitted). To determine whether an actionable hostile work environment claim exists, the Court looks to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The seven incidents as a whole are not severe, persuasive or humiliating enough to rise to the level of a hostile work environment. Bolton El has not introduced any evidence that any of these incidents were connected in any way to her race or color. The comments made by Bolton El's co-workers, Lennahan and Kovitz, were stray remarks that do not constitute an actionable hostile work environment. *See Oest*, 240 F.3d at 611. Moreover, there is no evidence that the comments were directed at her or that she reported those comments to SCI. Bolton El admitted that she did not follow the procedure outlined in the SCI Employee Handbook's section for reporting harassment. (Def.'s LR 56.1(a)(3) ¶¶ 9-10.) Thus, SCI cannot be liable for harassment that Bolton El failed to report. *See Murray v. Chi. Transit Auth.*, 252 F.3d 880, 899 (7th Cir. 2001) (holding that an employer is not liable for harassment by another employee when a policy to report harassment exists, but the victim fails to use it). When Bolton El did complain to her supervisors, SCI responded. SCI sent a representative to investigate her claims after Bolton El called the Care Line to report alleged harassment. (Pl.'s LR 56.1(b)(3)(A) ¶ 34.) When Bolton El complained about the cold temperature of the office, Hayes responded by purchasing her a space heater to use at her desk. (*Id.* ¶ 24.)

15

Furthermore, the fact that Bolton El disputes the reasons for her warning notice for her failure to communicate with a co-worker and her termination does not create a hostile work environment. *See Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000) (stating that the court "does not sit as a super personnel department to review an employer's business decisions"). Nor do her allegations that SCI failed to give her yearly anniversary pin or that the office was too cold rise to the level of a hostile work environment. *See Bethea v. LaSalle Bank, N.A.*, 287 F. Supp. 2d 877, 881 (N.D. Ill. 2003) (holding that "petty slights and normal workplace frictions" do not constitute a hostile work environment). Therefore, the Court grants SCI's motion as to the claims for racial and color harassment.

## CONCLUSION

For the reasons set forth above, the Court grants SCI's motion for summary judgment [doc. no. 22-1]. This case is hereby terminated.

**SO ORDERED**  ENTERED: 9/20/05

_____
**HON. RONALD A. GUZMAN**
**United States Judge**